# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUSHA HALBERSTAM, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>AMYLIN PHARMACEUTICALS, INC., et al.,<br><br>Defendants. | CASE NO. 12cv1787-LAB (JMA)<br><br>**ORDER GRANTING AMYLIN'S MOTION TO STAY** |

    Amylin filed a motion to stay this case on July 30. At that time, Plaintiffs were trying to enjoin Amylin's acquisition by Bristol-Myers Squibb, on allegations that Amylin's board of directors breached their fiduciary duties and violated the Securities Exchange Act in approving the acquisition and pitching it to shareholders in a 14D-9 "Recommendation Statement." Plaintiffs had filed a motion for a preliminary injunction and expedited discovery toward this end.

    Why stay the case? Because Plaintiffs aren't the only ones challenging Amylin's acquisition—and a challenge in the Delaware Court of Chancery is farther along and has essentially settled. These are the essentials details: Amylin announced the proposed acquisition on June 29, 2012 and in quick order *several* cases were filed in the Court of Chancery. The first, *Phillips v. Amylin*, was filed on July 3, 2012. (Plaintiffs themselves filed

one on July 9, 2012, which they subsequently dismissed when the Court of Chancery named Phillips lead plaintiff and certified a class of Amylin shareholders. Then they came to this Court.) *Phillips*, as Amylin suggests in its briefing, has proceeded "promptly and efficiently"; an agreement to settle has been reached, and the parties will soon submit that settlement to the Court of Chancery for final approval. (*See* Br. at 3–4; Reply Br. at 3.) The essence of Amylin's motion to stay is that this Court should refrain while the Court of Chancery is at work.[1]

But there's really not much of a case left to stay in this Court. On July 27, 2012, the same day that the parties in Delaware signed a Memorandum of Understanding reflecting an intent to settle the case, Amylin filed an amended 14D-9. Plaintiffs concede that it "addressed practically all of the concerns identified in Plaintiffs' complaints and Plaintiffs' demands to Defendants." (Opp'n Br. at 2.) Indeed, on July 31, 2012 they withdrew their motion for a preliminary injunction and expedited discovery. What *is* left, then? Nothing other than Plaintiffs' request for attorneys' fees and expenses, which is based on their belief that *this* lawsuit, not the one in Delaware, was responsible for the amended 14D-9 : "Plaintiffs filed complaints in this court that were in all respects superior to the complaint filed in Delaware." (Opp'n to Ex Parte App. at 2.) Or, as they put it in their opposition brief,

> Defendants will likely say that they provided the Supplemental Disclosures solely because of a settlement in a case arising out of the same transaction pending in Delaware Chancery Court, but the record demonstrates that Plaintiffs here were the primary, if not the sole, cause for Defendants' providing the Supplemental Disclosures. Indeed, the chart below comparing the pleadings filed by Plaintiffs here and the complaint filed in Delaware reveals that Plaintiffs sought the supplemental disclosures from the outset of the litigation and that the Delaware plaintiff, by contrast, failed to address these critical disclosure issues in his pleading and, thus, posed no real litigation risk to Defendants.

(Opp'n Br. at 2.) Obviously, Plaintiffs have not made subtlety a priority.

---

[1] The only apparent difference between the *Phillips* case and this one is that violations of the federal securities laws are alleged here. That's not much of a difference. Amylin makes the point succinctly in its moving brief: "All eight complaints contain the same core set of allegations: that Amylin's board of directors breached their fiduciary duties in approving the Proposed Merger, and made material misstatements or omissions in the Company's 14D-9." (Br. at 7.) Plaintiffs don't meaningfully contest this.

It's also not entirely clear to the Court, however, that a stay is what Amylin wants. What Amylin *really* wants—and it makes perfect sense to the Court—is for Plaintiffs to go to Delaware and seek attorneys fees there. Plaintiffs admit their claims were mooted by Amylin's amended 14D-9, and the Court has done nothing substantive in this case. It didn't certify a class. It didn't supervise any discovery. It didn't receive the Memorandum of Understanding reflecting Amylin's intent to settle. It won't be approving the final settlement. All it has done is issue scheduling orders. (*See* Doc Nos. 5, 15, 24.) The Court's understanding of this dispute therefore pales in comparison to that of the Court of Chancery. Moreover, if this Court were to find that Plaintiffs are responsible for the amended disclosures and entitled to attorneys' fees, and the Court of Chancery were to find the same with respect to the lead plaintiff there, Amylin shareholders be paying twice for the same disclosures *and* the factual findings behind the payments would be in direct conflict with one another. It makes all the sense in the world, then, for the Delaware Court of Chancery to consider all fee disputes.[2] If all the Court does is stay this case, however, and Plaintiffs don't seek fees in Delaware, the Court might still have to rule on their motion for attorneys' fees and expenses. In that case, the stay won't have accomplished much.

All of this said, a stay really is Amylin's only option. The Court can't transfer Plaintiffs' motion for attorneys' fees and expenses to the Court of Chancery, and it certainly can't force the Court of Chancery to consider the motion. Nor, once this action was filed, could this Court require Plaintiffs to dismiss it and file their motion for fees and expenses with the Court of Chancery.[3]

---

[2] The Court doesn't see much of a response from Plaintiffs on this point. Instead, they assert, somewhat meagerly, that this Court should determine their fees and expenses "because Amylin is headquartered in this District, many of the Individual Defendants reside in this District, and this Court has jurisdiction over this matter." (Opp'n Br. at 2; Doc. No. 20-1 at 2.)

[3] Amylin calls the Court's attention to *In re: Sauer-Danfoss, Inc.*, a good case from the Delaware Court of Chancery. 2011 WL 2519210 (Del. Ch. 2011). Like this case, *Sauer-Danfoss* involved a tender offer that spawned multiple lawsuits, the first in Delaware and a second in Iowa state court. The Court of Chancery would later dismiss the Delaware action as moot, but it retained jurisdiction to consider any fee applications. More importantly, the dismissal order "permitted the Plaintiffs in the Iowa suit, if they desired, to file an application

Amylin's motion to stay goes out of its way to decry "deal litigation"—the inevitable deluge of lawsuits that are filed when a major corporate acquisition is announced—and classify this case as such. (The Court of Chancery in *Sauer-Danfoss* identified the various plaintiffs' lawyers as both "familiar" and "entrepreneurial". *Sauer-Danfoss*, 2011 WL 2519210 at *2.) The Court can't do anything about that. It can, though, make common sense decisions about how judicial resources are best spent. The motion to stay is **GRANTED**. Whether the Court bases that decision on *Colorado River* abstention doctrine, general principles of comity, or its inherent authority to control its docket isn't of much consequence. It is the right thing to do. Plaintiffs' motion for attorneys' fees and expenses should be submitted to the Delaware Court of Chancery so that it may be considered with all similar motions pending before that court.

**IT IS SO ORDERED**.

DATED: November 16, 2012

*[signature]*

**HONORABLE LARRY ALAN BURNS**
United States District Judge

---

with [the Court of Chancery]." *Id.* at *5. The Vice Chancellor applauded the Iowa plaintiffs for this:

> Commendably, the Iowa plaintiffs dismissed their suit, and on June 11, they joined the Delaware plaintiffs in making a joint fee application. By doing so, they reasonably avoided forcing two courts to expend judicial resources addressing an identical issue and saved the stockholders whom they purported to represent the cost of having their corporation pay for defense counsel to oppose two fee applications.

*Id*. Of course, the situation is different here. This Court is in the position of the Iowa court, and there's no evidence that the Court of Chancery has invited other plaintiffs to move for attorneys' fees and expenses.